```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                             :
FRANK SCHEMBRI,                                              :
                                                             :   **MEMORANDUM DECISION**
                                        Plaintiff,           :   **AND ORDER**
                                                             :
              - against -                                    :   20-cv-4612 (BMC)
                                                             :
COMMISSIONER OF SOCIAL                                       :
SECURITY,                                                    :
                                                             :
                                        Defendant.           :
                                                             :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff seeks review of the decision of the Commissioner of Social Security, following a hearing before an Administrative Law Judge, that he is not disabled as defined by the Social Security Act and therefore is not entitled to disability insurance benefits under Title II of the Act. The ALJ found that plaintiff has severe impairments of lumbar spine degenerative disc disease with spondylosis and radiculopathy, right hip osteoarthritis, and obesity. Notwithstanding these impairments, the ALJ also found that plaintiff could perform sedentary work with the following restrictions: (1) after 30 minutes of sitting, plaintiff must stand at his workstation for five minutes before sitting down again; (2) plaintiff can never push, pull, or operate foot controls with his legs or feet; (3) plaintiff can only occasionally climb ramps and stairs, and he can never climb ropes, ladders, or scaffolds; (4) plaintiff can only occasionally balance or stoop; (5) plaintiff can never kneel, crouch, crawl, be exposed to unprotected heights, or be exposed to moving mechanical parts; and (6) plaintiff can only occasionally operate a motor vehicle. Because a vocational expert testified that these restrictions were consistent with plaintiff's past relevant work as a securities trader, the ALJ found that plaintiff was not disabled.

Plaintiff raises seven points of error in his motion for judgment on the pleadings. They largely overlap and the point headings for several do not describe the argument set forth beneath them. For the most part, plaintiff's arguments assert a different opinion as to how to weigh the evidence.

Two of these arguments must be swiftly rejected. First, plaintiff argues that since the vocational expert testified that an employer would tolerate plaintiff being off-task no more than 10 percent of the time, the ALJ's finding that plaintiff must stand for five minutes after every 30 minutes of sitting means that he would be off-task for more than 10 percent of an eight-hour workday, and he is therefore disabled. As the Commissioner points out, however, the ALJ did not find that plaintiff had to take a five-minute break every 30 minutes (nor did plaintiff's treating pain management specialist, Dr. Glenn Babus, whose opinion on this point the ALJ adopted). The ALJ, like Dr. Babus, simply found that plaintiff must work standing up for five minutes every 30 minutes. That should be no problem for a securities trader.

Second, plaintiff argues that the ALJ failed to give adequate weight to his testimony that his pain medication makes him "drowsy," "a little constipated," and gives him "trouble sleeping." This argument concerns the ALJ's determination not to accept every part of plaintiff's testimony, which I will discuss more fully below. But for present purposes, it suffices to note that plaintiff does not cite any evidence in his extensive medical record showing that he ever mentioned these side effects to his doctors. To the contrary, a treatment note from January 2019 reports: "[H]e states he is doing extremely well since we added Gabapentin 600mg at night stating it is helping with sleep. He uses Percocet 10/325 mg TID which provides him with 70% relief in conjunction with his [G]abapentin." The note continues, "We will therefore continue as is without change." If there was a problem with his medication, that would have been a good

time to mention it, but plaintiff didn't. The ALJ specifically referenced plaintiff's testimony about side effects, so the ALJ was well aware of it, but the ALJ did not have to expressly reject it.

The remainder of plaintiff's points of error are modestly more substantial but do not withstand scrutiny. His first point heading is that "The Administrative Law Judge's Residual Functional Capacity Analysis is Not Supported by the Substantial Evidence of Record." Plaintiff contends that the ALJ "failed to properly evaluate all the objective and non-objective medical evidence in assessing [his] residual functional capacity (RFC) for sedentary work." However, instead of pointing to what evidence the ALJ failed to properly evaluate, plaintiff merely notes that Dr. Babus opined that he "would be limited to frequently lifting less than ten (10) pounds"; that he "should never balance, kneel, crouch or crawl"; and that he "would not be able to sit the required six (6) hour total for sedentary work due to his lower back and hip pain." But plaintiff's problem with the ALJ's treatment of Dr. Babus's opinion is unclear. The restrictions set forth in Dr. Babus's opinion are essentially the restrictions of sedentary work with the limitations placed on it by the ALJ. The ALJ adopted Dr. Babus's opinion almost entirely, stating that he found it "persuasive."

The only difference between the ALJ's assessment and Dr. Babus's opinion is minor – the ALJ did not agree that plaintiff should "never" balance, instead allowing "occasional" balancing.[1] The ALJ's decision not to adopt that small part of Dr. Babus's opinion had a solid basis in the record. As the ALJ explained, the medical reports show that plaintiff didn't need a cane (despite his testimony to the contrary), that he walked well, and that he was encouraged to

---

[1] Plaintiff also complains that Dr. Babus opined that plaintiff should "never" crouch, but that is not what Dr. Babus opined.

3

walk as much as possible. In any event, the ALJ's restrictions permitting plaintiff to only occasionally climb ramps and stairs, and never climb ropes, ladders, or scaffolds, goes 99 percent of the way to Dr. Babus's conclusion that plaintiff should never balance. Since the only argument made under this point heading references Dr. Babus, and the ALJ effectively accepted Dr. Babus's opinion, I reject this point of error.

Plaintiff's next point heading is that "The Administrative Law Judge Erred in Not Giving Proper Weight to The Plaintiff's Treating Physician and Objective Evidence of Record." The first line of the argument again refers to Dr. Babus, this time claiming that the ALJ improperly rejected a medical source statement from him. One might think from this point heading and introduction that plaintiff is relying on the treating physician rule to argue that more weight should have been given to a medical source statement from Dr. Babus, but that would be wrong. First, this is not a treating physician rule case, as plaintiff's administrative claim was filed after March 27, 2017, the date that the Commissioner's regulations superseded the treating physician rule, see 20 C.F.R. § 404.1513(a)(2), so plaintiff's argument is a non-sequitur. Second, the medical source statement that plaintiff cites was not from Dr. Babus.

Although plaintiff does not explain what portion of a medical source statement he believes was inconsistent with the ALJ's decision, it appears that plaintiff meant to refer to a medical source statement from his physical therapist, Mr. Craig Snyder, whose opinion would not have attracted any deferential weight even if this were a treating physician rule case.[2] The ALJ expressly rejected Mr. Snyder's opinion and explained the reasons for doing so. Specifically, the ALJ found the opinion to be inconsistent with both plaintiff's conservative

---

[2] The confusion is typical of the rather careless and poorly organized arguments that plaintiff's counsel has advanced.

4

treatment and the objective medical evidence, as plaintiff's treatment consisted of a few rounds of epidural injections, some home treatment such as icing and heating, and only two months of physical therapy.[3] Plaintiff also rejected restorative treatment as "too expensive," and no health care provider even suggested that his condition rose to the level of considering surgery.

The only argument plaintiff gives to refute the ALJ's finding is to point to plaintiff's MRIs, which showed degeneration in a couple of discs and his right hip. These tests definitely supported the ALJ's determination that plaintiff had severe impairments of lumbar spine degenerative disc disease with spondylosis and radiculopathy and right hip osteoarthritis, but by themselves, they do not show the requisite level of compromise of plaintiff's functional capacity. The ALJ had to look elsewhere else for that, and he found it in Dr. Babus's rather mild description of plaintiff's condition and the lack of aggressive physical, medical, or surgical treatment. Plaintiff does not argue or explain why the ALJ was not entitled to weigh the evidence that way rather than the way plaintiff would have liked him to weigh it.

Plaintiff's next point is that the ALJ should have accepted his subjective testimony. The testimony, if accepted, would have likely required a finding that plaintiff was disabled – plaintiff testified to back pain of 9 out of 10 and hip pain of 10 out of 10. He also testified that he was wearing a back brace at the hearing and that he uses a cane. As for his activities of daily living, plaintiff testified that his daily routine is "just wak[ing] up and . . . just basically watch[ing] television," that he is unable to do daily activities because of pain, and that he requires slip-on shoes because he cannot bend to tie his shoelaces. He further testified that his wife does the

---

[3] One of plaintiff's brief points argues similarly that the ALJ should have considered his "persistent efforts to obtain relief" as indicative of disability, citing SSR 16-3p. Plaintiff views his pain injections and physical therapy as "persistent." The ALJ viewed them as "conservative." SSR 16-3p advises that increasing dosages, changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources "may" show that the claimant's symptoms are intense and persistent. Plaintiff's treatments do not fall within SSR 16-3p, certainly not to the extent to permit a reviewing court to find that the ALJ's characterization was incorrect.

5

cooking, cleaning, laundry, and grocery shopping. The ALJ set forth all of this testimony but rejected it, largely on the basis that it was inconsistent with Dr. Babus's opinions and plaintiff's almost entirely normal neurological testing of the impacted areas. There is no error in that determination.

Plaintiff's final point of error is that the ALJ did not focus on his ability to sustain work activities, as addressed by SSR 96-8p. This brief point merely quotes one part of that lengthy Ruling, namely, that the RFC assessment must include "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Plaintiff's argument then concludes by stating that: "However, in this instance the Plaintiff's residual functional capacity is not inconsistent with the medical and nonmedical evidence. The evidence supports Mr. Schembri's inability to perform sedentary work. As such, remand is warranted."

I am not sure what plaintiff's counsel meant by the first sentence quoted above. If he meant to say that the RFC as determined by the ALJ is consistent with the evidence, which it appears to say, then he has not objected to the ALJ's conclusion. Maybe he meant "consistent" instead of "inconsistent." In any event, plaintiff's conclusion does not relate to the alleged violation of SSR 96-8p – it says nothing about an inadequate narrative. Nor does the argument describe *how* the ALJ's assessment of plaintiff's RFC is inconsistent with the evidence; plaintiff's counsel apparently thinks that is self-evident. But it is not self-evident to this Court, and plaintiff's total reliance on an *ipse dixit* is unpersuasive.

Turning first to SSR 96-8p, the ALJ's decision contains a thorough narrative discussion of the evidence at several points. The ALJ's reliance on Dr. Babus's treatment notes and evaluation, plus plaintiff's consistently normal neurological testing, lend plenty of support for the

6

ALJ's determination on RFC. As far as sustainability, the form that Dr. Babus used for his medical source statement, Form HA-1151-U4, is designed to solicit views on sustainability – all the questions are phrased in terms of a claimant's ability to undertake work tasks "in an 8-hour workday," not merely on a one-off basis. Dr. Babus's answers left no doubt that he thought plaintiff could work – his caution that "plaintiff should not overexert himself in a work day with any excessive bending, stair climbing or stooping" strongly supports the ALJ's assessment that plaintiff could perform sedentary work with the restrictions he imposed.

Because there was substantial evidence to support the ALJ's decision, plaintiff's motion for judgment on the pleadings [10] is denied, and the Commissioner's cross-motion for judgment on the pleadings [13] is granted.

**SO ORDERED.**

Digitally signed by Brian M. Cogan
_____
U.S.D.J.

Dated: Brooklyn, New York
September 14, 2021

7